IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| SETH A. NICHAMOFF, *et al.*, § | | |
| Plaintiffs, § | | |
| § | | |
| v. § | | CIVIL ACTION NO. H-12-1039 |
| § | | |
| CITIMORTGAGE, INC., *et al.*, § | | |
| Defendants. § | | |

## MEMORANDUM AND ORDER

This case is before the Court on the Motion to Dismiss [Doc. # 27] filed by Defendant CitiMortgage, Inc. ("CitiMortgage"), to which Plaintiffs Seth A. Nichamoff and Heidi J. Seifert filed a Response [Doc. # 35], and CitiMortgage filed a Reply [Doc. # 37]. Having reviewed the full record and applicable legal authorities, the Court **grants** the Motion to Dismiss as to the Truth in Lending Act ("TILA"), fraudulent and negligent misrepresentation, Texas Deceptive Trade Practices Act ("DTPA"), and slander of title claims, and **denies** the Motion to Dismiss as to the breach of contract claim.

### I. BACKGROUND

Plaintiffs obtained an interest-only loan from CitiMortgage through Salomon Smith Barney. The amount of the loan was $1,500,000.00, secured by an account in

Seifert's name in which she maintained approximately $600,000.00-$650,000.00. The parties dispute whether the full account was pledged or only $375,000.00.

In late 2011, Plaintiffs applied with Merrill Lynch to refinance their mortgage. On November 1, 2011, Merrill Lynch approved Plaintiffs for a 30-year fixed loan at the rate of 4.75 percent per annum, provided that Plaintiffs would transfer $250,000.00 to Merrill Lynch. In December 2011, Nichamoff contacted Morgan Stanley (who had acquired Salomon Smith Barney) to transfer $250,000.00 to Merrill Lynch. At that time, Morgan Stanley advised Nichamoff that CitiMortgage had frozen the account and the transfer could not be completed. After much discussion, Morgan Stanley transferred $208,000.00 in January 2012, followed by an additional $50,000.00 on February 1, 2012.

Plaintiffs filed this lawsuit, asserting a violation of the TILA, fraudulent and negligent misrepresentation, a violation of the DTPA, slander of title, and breach of contract. CitiMortgage filed the pending Motion to Dismiss, which has been fully briefed and is now ripe for decision.

## II.    STANDARD FOR MOTION TO DISMISS

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure is viewed with disfavor and is rarely granted. *Harrington v. State Farm Fire & Cas. Co.*, 563 F.3d 141, 147 (5th Cir. 2009). The complaint must be liberally

construed in favor of the plaintiff, and all facts pleaded in the complaint must be taken as true. *Id.* The complaint must, however, contain sufficient factual allegations, as opposed to legal conclusions, to state a claim for relief that is "plausible on its face." *See Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). When there are well-pleaded factual allegations, a court should presume they are true, even if doubtful, and then determine whether they plausibly give rise to an entitlement to relief. *Id.* at 1950. Nonetheless, regardless of how well-pleaded the factual allegations may be, they must demonstrate that the plaintiff is entitled to relief under a valid legal theory. *See Neitzke v. Williams,* 490 U.S. 319, 327 (1989); *McCormick v. Stalder,* 105 F.3d 1059, 1061 (5th Cir. 1997).

In considering a motion to dismiss, a court must ordinarily limit itself to the contents of the pleadings and attachments thereto. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000) (citing FED. R. CIV. P. 12(b)(6)). "Documents that a defendant attaches to a motion to dismiss are [also] considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim." *Id.* (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)); *see also Kane Enters. v. MacGregor (USA), Inc.*, 322 F.3d 371, 374 (5th Cir. 2003). "In so attaching, the defendant merely assists the plaintiff in establishing the basis of the suit, and the court in making the elementary

determination of whether a claim has been stated." *Collins*, 224 F.3d at 499. These are documents discussed in Plaintiff's Complaint and whose authenticity no party questions.

### III.   ANALYSIS

#### A.   TILA Claim

Plaintiffs allege that CitiMortgage violated the TILA by failing to disclose its intent to "freeze" Seifert's account. A claim under the TILA must be filed "within one year from the date of the occurrence of the violation." 15 U.S.C. § 1640(e). The Security Agreement on which CitiMortgage relied in freezing Seifert's account was signed in November 2006. Plaintiffs filed this lawsuit on January 18, 2012, well beyond the one-year statute of limitations.

Plaintiffs argue that the statute of limitations should be tolled. Nondisclosure, alone, is not a sufficient basis for tolling the statute of limitations. *See Moor v. Travelers Ins. Co.*, 784 F.2d 632, 633 (5th Cir. 1986). Indeed, to toll the TILA statute of limitations, the plaintiff must "show that the defendants concealed the reprobated conduct and despite the exercise of due diligence, he was unable to discover that conduct." *Id.* In this case, Plaintiffs assert summarily in their First Amended Complaint that "CitiMortgage fraudulently concealed the freezing of all of Dr. Seifert's accounts." *See* First Amended Complaint, ¶ 79. Plaintiffs do not, however,

allege factual support for this bald assertion of concealment.  Moreover, Plaintiffs do not allege that they were unable to discover the frozen accounts "despite the exercise of due diligence."  The Security Agreement and information regarding Seifert's accounts were available to Plaintiffs at all times from November 2006 to the present.  As a result, Plaintiffs have failed to allege a legal or factual basis for tolling the TILA statute of limitations in this case.  Defendant's Motion to Dismiss the TILA claim is granted.

### B.    Fraudulent and Negligent Misrepresentation Claim

Under Texas law, the elements of a fraud cause of action are: (1) a material representation; (2) that was false when made; (3) the speaker either knew it was false, or made it without knowledge of its truth; (4) the speaker made it with the intent that it should be acted upon; (5) the plaintiff acted in reliance; and (6) the plaintiff was injured as a result.  *Herrmann Holdings Ltd. v. Lucent Techs. Inc.*, 302 F.3d 552, 563 n.3 (5th 2002) (citing *Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 47 (Tex. 1998)).  "Negligent misrepresentation requires proof that: (1) the defendant in the course of his business or a transaction in which he had an interest; (2) supplied false information for the guidance of others; (3) without exercising reasonable care or competence in communicating the information; (4) the plaintiff justifiably relied on the information; (5) proximately causing the plaintiff's

injury." *Kastner v. Jenkens & Gilchrist, P.C.*, 231 S.W.3d 571, 577 (Tex. App. -- Dallas 2007, no pet.); *see also In Re Stonebridge Technologies, Inc.*, 430 F.3d 260, 267 n.4 (5th Cir. 2005).

When a written contract exists, "it is more difficult for a party to show reliance on subsequent oral representations." *Beal Bank, S.S.B. v. Schleider*, 124 S.W.3d 640, 651 (Tex. App. – Houston [14th Dist.] 2003) (citing *Bluebonnet Sav. Bank, F.S.B. v. Grayridge Apartment Homes, Inc.,* 907 S.W.2d 904, 908 (Tex. App. – Houston [1st Dist.] 1995, writ denied)). "[N]egligent misrepresentation is a cause of action recognized in lieu of a breach of contract claim, not usually available where a contract was actually in force between the parties." *Id.* (quoting *Airborne Freight Corp., Inc. v. C.R. Lee Enters., Inc.*, 847 S.W.2d 289, 295 (Tex. App. – El Paso 1992, writ denied)); *see also New York Life Ins. Co. v. Miller*, 114 S.W.3d 114, 125 (Tex. App. – Austin 2003).

Generally, under Texas law, tort damages are not recoverable when the injury is the economic loss caused by a breach of contract. *See Jim Walter Homes, Inc. v. Reed*, 711 S.W.2d 617, 618 (Tex. 1986). This "economic loss rule" applies in cases where the plaintiff complains about a defendant's conduct in connection with the performance of a written contract between the parties. *See Sharyland Water Supply Corp. v. City of Alton*, 354 S.W.3d 407, 417-18 (Tex. 2011); *Southwestern Bell Tel.*

*Co. v. DeLanney*, 809 S.W.2d 493, 494 (Tex. 1991). Because, as discussed more fully below, Plaintiffs assert a viable breach of contract claim, Defendant is entitled to dismissal of the fraudulent and negligent misrepresentation claim.[1]

### C. DTPA Claim

The DTPA protects "consumers" from "[f]alse, misleading, or deceptive acts or practices." *See* TEX. BUS. & COMM. CODE § 17.46(a). Being a consumer is a statutory prerequisite to stating a DTPA claim. *See FDIC v. Munn*, 804 F.2d 860, 863 (5th Cir.1986); *Riverside Nat'l Bank v. Lewis*, 603 S.W.2d 169, 173 (Tex.1980). The Act defines "consumer" as an individual "who seeks or acquires by purchase or lease, any goods or services." *See* TEX. BUS. & COMM. CODE § 17.45(4); *Clardy Mfg. v. Marine Midland Bus. Loans, Inc.*, 88 F.3d 347, 356 (5th Cir. 1996). Further, the purchased goods or services must form the basis of the complaint. *See id.*; *Cameron v. Terrell & Garrett, Inc.*, 618 S.W.2d 535, 539 (Tex.1981).

The DTPA defines "goods" as "tangible chattels or real property purchased or leased for use." *See* TEX. BUS. & COMM. CODE § 17.45(1). "Services" are defined as "work, labor or service purchased or leased for use, including services furnished in

---

[1] The Texas Supreme Court has declined to apply the economic loss rule to a fraudulent inducement claim. *See Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41 (Tex. 1998). Plaintiffs in their First Amended Complaint do not assert such a claim.

connection with the sale or repair of goods." *See* TEX. BUS. & COMM. CODE § 17.45(2). "Goods and services," however, do not include such intangibles as loans. *See FDIC v. Munn*, 804 F.2d 860, 863 (5th Cir.1986); *Riverside*, 603 S.W.2d 169, 173-76. Furthermore, an activity related to a loan transaction is a "service" under the DPTA only if the activity is "an objective of the transaction, not merely incidental to it." *First State Bank v. Keilman*, 851 S.W.2d 914, 928 (Tex. App.—Austin 1993, writ denied); *see also Munn*, 804 F.2d at 865.

"A pure loan transaction lies outside of the DTPA based on the logic that money is neither a good or service." *Walker v. FDIC*, 970 F.2d 114, 123 (5th Cir. 1992). Plaintiffs argue correctly that a plaintiff in some cases may qualify as a consumer where he obtained a loan to purchase property, citing *Knight v. Int'l Harvester Credit Corp.*, 627 S.W.2d 382 (Tex. 1982).[2] The Fifth Circuit noted in *Walker*, however, that plaintiffs under such circumstances qualify as "consumers" only if the property purchased with the loan proceeds forms the basis for the DTPA claim. *See Walker*, 970 F.2d at 123. In this case, Plaintiffs assert no complaints about the home they purchased with the loan proceeds. Consequently, Plaintiffs in this case

---

[2] In *Knight*, the retail installment contract provided specifically that the "Purchaser hereby purchases, and seller hereby sells" the truck covered by the installment contract..

do not qualify as "consumers" for purposes of the DTPA. Defendant's Motion to Dismiss this claim is granted.

### D.  Slander of Title Claim

"Slander of title" under Texas law is "a false and malicious statement made in disparagement of a person's title to property which causes special damages." *Marrs and Smith Partnership v. D.K. Boyd Oil and Gas Co., Inc.*, 223 S.W.3d 1, 20 (Tex. App. – El Paso 2005, pet. denied) (citing *Sadler v. Duvall,* 815 S.W.2d 285, 293 (Tex. App. – Texarkana 1991, writ denied)). To state a claim for "slander of title," the plaintiff must allege that the false and disparaging statement caused the loss of a specific sale of the property. *Id.* (citing *Hill v. Heritage Resources, Inc.*, 964 S.W.2d 89, 115-16 (Tex. App. – El Paso 1997, *pet. denied*)). Plaintiffs have not alleged the loss of a specific sale and, as a result, CitiMortgage is entitled to dismissal of the slander of title claim.

### E.  Breach of Contract Claim

Plaintiffs allege that CitiMortgage breached its contract with them by "freezing" all the funds in Seifert's account. In order to state a breach of contract claim, a plaintiff must allege the existence of a contract, the performance or tender of performance by the plaintiff, a breach by the defendant, and damages as a result of that breach. *Bridgmon v. Array Sys. Corp.*, 325 F.3d 572, 577 (5th Cir. 2003).

In the First Amended Complaint, Plaintiffs allege that they entered into a loan contract with CitiMortgage, that they maintained a minimum balance of $375,000.00 in the Seifert accounts, that Defendant breached the contract by freezing Seifert's accounts in full, and that they suffered damages as a result of the breach. *See* First Amended Complaint, ¶¶ 106-113. As a result, Plaintiffs have alleged factually the elements of a breach of contract claim.

CitiMortgage argues that the Security Agreement provides that it grants CitiMortgage a first priority lien in the "collateral," which includes "all money" in Seifert's account. Plaintiffs allege, and the Security Agreement contains, a handwritten notation added to the Security Agreement by Nichamoff and agreed to by CitiMortgage. That handwritten notation provides that Plaintiffs satisfy their obligations under the Security Agreement by "maintaining a *minimum* balance of $375,000.00 in the accounts . . .." *See* First Amended Complaint, ¶ 30 (emphasis added). Nichamoff maintains that the handwritten notation was intended to limit CitiMortgage's security interest in Seifert's accounts to a maximum of $375,000.00, but the language used does not unambiguously convey that intent. CitiMortgage, after an adequate time to complete discovery, may seek summary judgment on whether the notation is ambiguous and, if so, on the correct interpretation of the notation. The

argument does not, however, support dismissal of the breach of contract claim at this point.

CitiMortgage argues also that the Security Agreement permits CitiMortgage to "sell, assign, transfer, deliver or dispose of any or all of the Collateral" should any one of four events (such as default under the Promissory Note) occur. CitiMortgage argues that the First Amended Complaint is subject to dismissal because Plaintiffs have not alleged affirmatively that none of those events occurred in this case.[3] Plaintiffs allege that they have performed all conditions precedent to the assertion of their claims, including the breach of contract claim. *See* First Amended Complaint, ¶ 120. Beyond that, they are not required to negate in the complaint every potential scenario on which CitiMortgage may base a defense. If appropriate, CitiMortgage may assert this argument in a motion for summary judgment following discovery.

## IV.  **CONCLUSION AND ORDER**

Based on the foregoing, the Court concludes that Plaintiffs have failed to assert valid TILA, fraudulent and negligent misrepresentation, DTPA, and slander of title claims. Plaintiffs have adequately alleged a breach of contract claim. Accordingly, it is hereby

---

[3]   CitiMortgage does not assert in the Motion to Dismiss or in the Reply that any of the four events occurred prior to its freezing Seifert's account.

**ORDERED** that Plaintiffs' Motion to Dismiss [Doc. # 27] is **GRANTED** as to the TILA, fraudulent and negligent misrepresentation, DTPA, and slander of title claims, and **DENIED** as to the breach of contract claim. The case remains scheduled for a conference on October 4, 2012.

SIGNED at Houston, Texas, this **25th** day of **September, 2012**.

_____
Nancy F. Atlas
United States District Judge